IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Stacy L. Evans, | ) | C/A No. 0:13-2637-TMC-PJG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Warden Cartledge, *McCormick CI*, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner Stacy L. Evans, a self-represented state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the respondent's motion for summary judgment. (ECF No. 29.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Evans was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the respondent's motion. (ECF No. 30.) Evans filed a response in opposition. (ECF No. 41.) Having carefully considered the parties' submissions and the record in this case, the court concludes that the respondent's motion for summary judgment should be granted and Evans's Petition denied.

## BACKGROUND

Evans was indicted in December 2008 in Florence County for kidnapping and three counts of criminal sexual conduct in the first degree (08-GS-21-1827). (App. at 553-55, ECF No. 28-5 at 55-57.) Evans was represented by Jack W. Lawson, Jr., Esquire, and on December 8-10, 2008 was tried before a jury and found guilty of kidnapping and one charge of criminal sexual conduct ("CSC") in the first degree. (App. at 419, ECF No. 28-4 at 21.) The circuit court sentenced Evans

to life imprisonment without the possibility of parole for each conviction. (App. at 428-29, ECF No. 28-4 at 30-31.)

Evans timely appealed and was represented by Lanelle C. Durant, Esquire, Assistant Appellate Defender, who filed an <u>Anders</u>[1] brief on Evans's behalf that presented the following question:

> Did the trial court err in sentencing appellant to life without parole (LWOP) when the state had *nol prossed* the original indictment on which written notice that the state was seeking LWOP was provided to appellant and the state had not served notice of LWOP on the second indictment which was the indictment upon which he was found guilty?

(App. at 430-39, ECF No. 28-4 at 32-41.) Evans did not file a *pro se* response to the <u>Anders</u> brief, but instead filed an affidavit on March 8, 2010 in which he waived his right to appeal. (ECF No. 28-7.) On March 12, 2010, the South Carolina Court of Appeals filed an order dismissing Evans's appeal. (App. at 443, ECF No. 28-4 at 45.) The remittitur was issued on March 30, 2010. (App. at 444, ECF No. 28-4 at 46.)

Evans filed a *pro se* application for post-conviction relief on April 29, 2010 ("2010 PCR") in which he raised the following claims: "ineffectiveness of counsel, failure to subpoena witness, conflict of interest, improper indictment, prosecutorial misconduct, clear error of court—by court's misadvise of Rule 609(B), State failed to proved every element of offense beyond reasonable doubt, lack of subject matter jurisdiction, malicious intent." (<u>See</u> <u>Evans v. State of South Carolina</u>, 10-CP-21-1258; App. at 445-69, ECF No. 28-4 at 47-71.) The State filed a return. (App. at 471-75, ECF

---

[1] <u>Anders v. California</u>, 386 U.S. 738 (1967). <u>Anders</u> requires that counsel who seeks to withdraw after finding the "case to be wholly frivolous" following a "conscientious examination" must submit a brief referencing anything in the record that arguably could support an appeal; furnish a copy of that brief to the defendant; and after providing the defendant with an opportunity to respond, the reviewing court must conduct a full examination of the proceedings to determine if further review is merited. <u>Anders</u>, 386 U.S. at 744.



No. 28-4 at 72-76.)  Evans amended his application through counsel on November 1, 2010 and alleged that the court "lacked subject matter jurisdiction to impose two (2) life sentences under the Recidivist Statute § 17-25-45(A)(1)."  (App. at 476-77, ECF No. 28-4 at 77-78.)  On February 7, 2011, the PCR court held an evidentiary hearing at which Evans appeared and testified and was represented by Charles T. Brooks, III, Esquire.  By order filed February 22, 2011, the PCR judge denied and dismissed with prejudice Evans's PCR application.  (App. at 536-43, ECF No. 28-5 at 38-45.)  On February 25, 2011, Evans filed a *pro se* motion to relieve counsel and motion to proceed *pro se* in which he asked the PCR court to reconsider its ruling denying his request to relieve counsel at his PCR hearing.  (ECF No. 28-10.)  The PCR Court issued an Order on March 23, 2011 denying Evans's motion.  (ECF No. 28-13.)  Counsel for Evans filed and served a notice of appeal on February 25, 2011.  (ECF No. 28-11.)  On March 9, 2011, Evans filed a *pro se* motion for reconsideration pursuant to Rule 59(e), asking the court to rule on approximately twelve additional issues.  (App. at 544-45, ECF No. 28-5 at 46-47).

On appeal, Evans was represented by Dayne C. Phillips, Esquire, Assistant Appellate Defender, who filed a <u>Johnson</u>[2] petition for a writ of certiorari on Evans's behalf that presented the following question:

> Did the PCR court err in finding that trial counsel provided effective assistance of counsel where trial counsel failed to conduct a reasonable investigation in preparation for Petitioner's trial by not finding and interviewing a witness that was critical to Petitioner's defense?

(ECF No. 28-15.)  Evans filed a *pro se* response to the <u>Johnson</u> petition in which he raised fifteen issues.  (ECF No. 28-16.)  On August 22, 2013, the South Carolina Supreme Court issued an Order

---

[2] <u>Johnson v. State</u>, 364 S.E.2d 201 (S.C. 1988) (applying the factors in <u>Anders v. California</u>, 386 U.S. 738 (1967) to post-conviction appeals).



denying Evans's petition for a writ of certiorari.  (ECF No. 28-17.)  The remittitur was issued

September 9, 2013.  (ECF No. 28-18.)  This action followed.

## FEDERAL HABEAS ISSUES

Evans's federal Petition for a writ of habeas corpus, as amended, raises the following issues:

**Ground One:**   Abuse of Discretion/conflict of interest by his PCR lawyer not helping Defendant raise his issue
**Supporting Facts:** During Defendant PCR hearing he made a time motion to relieve counsel for a conflict of interest for counsel failing to subpoena two witnesses James Langstone and Macy Ann Matthews to testify at PCR and at trial.  PCR counsel refused to raise all available issues as requested by Defendant preserve for appellate. Court denied defendant of motion to relieve counsel.  Denied defendant of is witnesses.

**Ground Two:**  Did the lower court err in denying Defendant 59 (e) motion for a rehearing to raise all available issues that were on original PCR
**Supporting Facts:**  Petitioner filed a proper motion to relieve his PCR counsel after his denial of his PCR and a 59 (e) supplemental raising all available issues to preserve for appellate review.  Petition claimed a conflict of interest an asserted his right to proceed "pro se" which was denied by the court with no explanation.

**Ground Three:**   Abuse of discretion/14th Amendment the lower court was in violation of the 14th Amendment.
**Supporting Facts:**  That the lower court failed to state specific finding of fact and conclusions of law on each issue raisd in PCR and thereof on 59 (e) motions and motion to relieve counsel in PCR in clear violation of the law.  That the Supreme Court failed to remain to fully develop the factual record to preserve issues for appellate review denying him his one bite of the apple.

**Ground Four:**   Ineffective assistance of counsel, counsel failed to object to indictment clear violation/14 Amendment
**Supporting Facts:**  Trial counsel was ineffective for failing to object to the invalid indictment presented which changed the nature of the offense in violation of the defendant right to a fair trial while the original indictment was still valid constituting a muctiplicions indictment depriving the court of subject matter jurisdiction preventing service of the notice of life without parole.

**Ground Five:**  Prosecutorial misconduct/improper bolstering with false evidence in violation of due process of law 14th Amendment
**Supporting Facts:**  The state entered into evidence two photographs of a woman's face showing bruising on the left hand side of her face. [] The official police report



wrote by Officer Summersette stated took 2 pictures of her right hand side of her face. Defendants alleged crime occurred in 2008.

**Ground Six:**  Ineffective assistance of counsel/violation of 6th amendment/conflict of interest
**Supporting Facts:**  Trial counsel was ineffective for failing to object to the state using this false evidence to bolster its case and failing to authenticate this pictures under Rule 902(4), Rule 1005, and Rule 1002 requirements of the originals knowing that the police report stated two pictures of right eye. The state produced pictures of the left eye with dates of 1-19-2005 that you could not identify the individual. Counsel failed to suppress this evidence in violation of due process.

**Ground Seven:**  Ineffective assistance of counsel/conflict of interest, violation of 6th amendment
**Supporting Facts:**  Counsel failed to object and impeach the state's witness testimony of Gloria Williamson with her inconsistent statement she gave to the police. Counsel failed to object and impeach and attack the credibility of Gloria Williamson, [LeGrand] Poston and Dena Seiglar with Mary Ann Matthews's statement that contradicted the state's witnesses and showed that the state's witnesses testimony was not consistent. Gloria Williamson claimed she was sitting at the bar and Legrand came in and stated he was leaving and would she be alright, she stated I was going to stay about 5 minutes to finish my drink. She claimed she left by herself went to her car and defendant came out of nowhere and grabbed her keys and pushed her inside her vehicle.

Mary Ann Matthews's statement paints a totally different picture on the events of the night. She claimed that she took Mona home then came back to the bar to pick Legrand up. He was not there. She had to go into the bar to "physically" pull Legrand out of the bar. Legrand, Williamson, and Evans were at the bar. Matthews pulled Legrand out by the collar. Williamson and Evans then came out behind them and followed them to Matthews's car, as she was leaving Williamson and Evans was hanging on the window talking to Legrand while she was driving out the parking lot leaving Evans and Williamson together.

Counsel could have introduced this testimony to contradict the victim and State's witness and called her as a defense witness and attacked the credibility of the witnesses. Had this testimony been introduced might have convinced jurors to disbelieve those witnesses causing reasonable doubt. Counsel intentionally kept this statement from me until after my trial and I did not discover this statement until I filed my PCR.

**Ground Eight:**  Abuse of discretion/ ineffective assistance of trial counsel/PCR counsel, violation 6th amendment compulsory process to secure witnesses.
**Supporting Facts:**  At the beginning of Petitioner's PCR hearing he requested that counsel be removed for a conflict of interest by not securing his witnesses for his PCR hearing. Petitioner notified PCR counsel of his need to produce James Langston and Mary Ann Matthews to testify at PCR. James Langston could have



testified that Evans and Williams left the bar together later that night after Legrand left contradicting her claim she left by herself and not with Defendant. This would have cast reasonable doubt on her testimony she was kidnapped. Mary Ann Matthews testimony would have contradicted her entire trial testimony of Gloria Williamson that she left within 5 minutes after Legrand left finishing her drink. Her testimony clearly shows that Gloria Williamson and Evans were together already when Legrand left. This would clearly cause confusion and reasonable doubt and the jury would have to decide the credibility of those to contradicting witnesses testimony. Further, her testimony contradicts Legrand trial testimony trying to collaborate Gloria Williamson's testimony and was caught in "perjury" on the stand changing his testimony from his original statement given to police. The Court denied me in PCR my subpoenas of both my witnesses contrary to State and Federal law. My trial counsel was ineffective for failing to secure both these witnesses at trial depriving me of my only defense.

**Ground Nine:** Ineffective assistance of counsel/conflict of interest violation of 6th Amendment
**Supporting Facts:** Counsel was ineffective for failing to discover and utilize prior criminal records of the prosecution's witnesses to attack their credibility. Counsel failed to discover and utilize the victims past medical record to discovery if victim and her husband had a prior (CDU) in 1-19-2005 that could have been used to show that these pictures used in evidence came from a CDU. Counsel discovered in trial that victim's husband was abusive per her report to the counselor. Had counsel done this he could have attacked the credibility of the witness and moved for a mistrial based on the State presenting false evidence.

**Ground Ten:** Ineffective assistance of counsel, conflict of interest violation of 6th Amendment
**Supporting Facts:** Counsel was ineffective for failing to attack the character of the victim and the State's witnesses under Rule 404(2) and failing to attack reputation evidence under Rule 607, 608. Counsel failed to discover the identity of an unknown male that left Gloria Williamson's apartment and failed to ask victim who she last had sex with and whether he has been seeing anyone during her pending divorce. This would have given reasons why she did not want to go back to her apartment. This would have supported his adultery theory had he inquired further into this testimony.

**Ground Eleven:** Ineffective assistance of counsel/conflict of interest, 6th amendment violation ineffective assistance PCR counsel
**Supporting Facts:** Counsel was ineffective for failing to object to leading the victim about how defendant supposedly sexually assaulted her and failing to object to the State leading Legrand Poston in questioning him directly if defendant had a knife improperly bolstering the victim's claim he said he had a knife, I didn't see one.



**Ground Twelve:**    Ineffective assistance of counsel/conflict of interest, 6th Amendment violation abuse of discretion

**Supporting Facts:** Counsel was ineffective and engaged in a conflict of interest by intentionally deceiving my and telling me they could use my entire criminal record to impeach me and attack my credibility.  Counsel failed to explain Rule 609(B) that specifically prohibits the State from using convictions over 10 years old for impeachment purposes.  Further, Defendants convictions could have been challenged for relevancy and claimed prejudicial if used.  609(B) states only crimes of fraud, deceit, and dishonesty can be used for impeachment purposes.   Had counsel explained this rule Defendant could have testified in his own defense counsel's untruthfulness and the Court's failure to explain this rule made his decision not to testify involuntary.  Defendant wanted to defend himself.  At PCR counsel claimed Defendants past history would have made him at bad witness.  Had counsel properly advised him of this rule along with Mary Ann Matthews testimony would have caused reasonable doubt in the jurors minds.

**Ground Thirteen:**    Ineffective assistance of counsel/conflict of interest, 6th Amendment violation failing to present any defense

**Supporting Facts:** Counsel was ineffective for failing to allow the Defendant from presenting his defense of consensual sex for murdering her husband.  Counsel failed to allow Defendant to present his defense or allow his girlfriend to present to the jury his defense.  Mona [Lebranche]'s statement specifically states what Defendant claimed in his defense at PCR.  Pg. 8 of the statement claims that he told me that the woman wanted Stacy to kill her husband and he tricked her and now the woman is mad at me.  At trial counsel only asks her on stand on pg. 200 Line 11-12 Q) And when he came back, what was his demeanor at that time? A) He told me what happened.  But counsel did not elicit the testimony from this witness stating what was told to her.  This entire testimony was not presented to the jury to establish a defense.  Had counsel presented this testimony, Mary Ann Matthews testimony, then the Defendant could have collaborated his whole story he told to the police on his statement.  Counsel should have presented the witnesses, false photo's, altered police reports, and truthfully told Defendant of Rule 609(b) and told him he had Mary Ann Matthews Statement to collaborate his story along with James Langston to establish he was still at the bar with Gloria Williamson after the other individuals left.  Had this been presented to the jury there is a reasonable probability that the Defendant would have caused reasonable doubt in the jurors minds.

**Ground Fourteen:**  State failed to prove beyond a reasonable doubt every element of the crimes Defendant was charged with.  Violation of 14th Amendment due process.

**Supporting Facts:** The State introduced evidence of another crime in attempt to bolster it's case against Defendant.  Medical personnel refuted the fact of the claim of bruising over her eye.  The police report claimed two pictures of her right eye was taken.  The State presented two pictures of a left eye with 1-19-2005 on the picture.



The State's witness (victim) testified that she was at the bar finishing a drink when her friend Legrand came up to her and stated I'm leaving will you be alright. Williamson stated I will leave in about 5 minutes after I finish my drink. She then claims she left by herself went to her car and Defendant came out of nowhere, grabber her keys and pushed her in the car.

Legrand Poston testified about the same thing trying to collaborate Gloria Williamson but was caught committing "perjury" by changing his statement in the middle of trial.

Mary Ann Matthews was never called as a witness nor was her statement used to contradict the State's witnesses. Mona [Lebranche] was never allowed to present the entire story of what was told to her by the Defendant "that this woman wanted me to kill her husband." Now she's mad at me.

The State also had numerous inconsistent testimony and improperly leading the witnesses. Further, it was shown that the de[te]ctives had inconsistent times on the police reports. No pictures or discs or negatives were introduced as proof of the pictures submitted as evidence. DNA evidence showed mixed samples of both individuals which could have supported consensual sex. James Langston could have been subpoenaed to testify that the Defendant left with Williamson after that night, casting even more doubt on her claim she left by herself. The victim was asked why didn't she go immediately to report the crime. The police station was one block away. The victim was going through a divorce. She had been abused by her husband. She had previously had sex with an unknown individual per the doctor's report. An unidentified man left her house the morning of the alleged crime. She went to the car wash to wash the mud off of her vehicle. No mud was inside the interior after she claimed being dragged down in the mud by Defendant. The gas station timer shows the vehicle was parked by the street well over 3 minutes when victim and Defendant was sitting here. Why would Defendant go straight home from the gas station if he supposedly assaulted this woman numerous times. The state has failed to prove this case beyond a reasonable doubt.

**Ground Fifteen:**  Ineffective assistance of counsel, conflict of interest, 6th Amendment violation, 6th Amendment violation of compulsory process
**Supporting Facts:**  Counsel was ineffective for failing to subpoena Mary Ann Matthews as a "rebuttal witness" to impeach the credibility of the State's witnesses and counsel failed to subpoena her using the compulsory process of the 6th Amendment to secure her presence in court as a defense witness.

(Pet., ECF No. 1; Am. Pet, ECF No. 16) (errors in original).

**DISCUSSION**

**A.    Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the

PJG

court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists.  <u>Weller v. Dep't of Soc. Servs.</u>, 901 F.2d 387 (4th Cir. 1990).

## B.    Habeas Corpus Standard of Review

In accordance with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), claims adjudicated on the merits in a state court proceeding cannot be a basis for federal habeas corpus relief unless the decision was "contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(1), (2).  When reviewing a state court's application of federal law, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  <u>Williams v. Taylor</u>, 529 U.S. 362, 410 (2000); <u>see also</u> <u>White v. Woodall</u>, 134 S. Ct. 1697, 1702 (2014) (describing an "unreasonable application" as "objectively unreasonable, not merely wrong" and that "even clear error will not suffice") (internal quotation marks and citation omitted); <u>Harrington v. Richter</u>, 131 S. Ct. 770, 785 (2011); <u>Humphries v. Ozmint</u>, 397 F.3d 206 (4th Cir. 2005); <u>McHone v. Polk</u>, 392 F.3d 691 (4th Cir. 2004).  Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  <u>Harrington</u>, 131 S. Ct. at 786 (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004)); <u>see also</u> <u>White</u>, 134



S. Ct. at 1702 (stating that " '[a]s a condition for obtaining habeas corpus from a federal court, a state

prisoner must show that the state court's ruling on the claim being presented in federal court was so

lacking in justification that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement' ") (alteration in original) (quoting Harrington,

131 S. Ct. at 786-87).  Under the AEDPA, a state court's decision "must be granted a deference and

latitude that are not in operation" when the case is being considered on direct review.  Harrington,

131 S. Ct. at 785.  Moreover, review of a state court decision under the AEDPA standard does not

require an opinion from the state court explaining its reasoning.  See id. at 784 (finding that "[t]here

is no text in [§ 2254] requiring a statement of reasons" by the state court).  If no explanation

accompanies the state court's decision, a federal habeas petitioner must show that there was no

reasonable basis for the state court to deny relief.  Id.  Pursuant to § 2254(d), a federal habeas court

must (1) determine what arguments or theories supported or could have supported the state court's

decision; and then (2) ask whether it is possible that fairminded jurists could disagree that those

arguments or theories are inconsistent with the holding of a prior decision of the United States

Supreme Court.  Id. at 786. "If this standard is difficult to meet, that is because it was meant to be."

Id.  Section 2254(d) codifies the view that habeas corpus is a " 'guard against extreme malfunctions

in the state criminal justice systems,' not a substitute for ordinary error correction through appeal."

Id. (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)).

**C.    Exhaustion Requirements**

A habeas corpus petitioner may obtain relief in federal court only after he has exhausted his

state court remedies.  28 U.S.C. § 2254(b)(1)(A).  "To satisfy the exhaustion requirement, a habeas

petitioner must present his claims to the state's highest court."  Matthews v. Evatt, 105 F.3d 907, 911

(4th Cir. 1997), abrogated on other grounds by United States v. Barnette, 644 F.3d 192 (4th Cir.



2011); see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases, 471 S.E.2d 454, 454 (S.C. 1990) (holding that "when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies."). To exhaust his available state court remedies, a petitioner must "fairly present[] to the state court both the operative facts and the controlling legal principles associated with each claim." Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004) (internal quotation marks and citation omitted). Thus, a federal court may consider only those issues which have been properly presented to the state appellate courts with jurisdiction to decide them. Generally, a federal habeas court should not review the merits of claims that would be found to be procedurally defaulted (or barred) under independent and adequate state procedural rules. Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008); Longworth, 377 F.3d 437; see also Coleman v. Thompson, 501 U.S. 722 (1991). For a procedurally defaulted claim to be properly considered by a federal habeas court, the petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

**D.     Summary Judgment Motion**

**1.     Claims That Are Not Cognizable**

In Grounds One through Three, Evans argues that the PCR court erred in denying his motion to relieve PCR counsel, in denying his *pro se* Rule 59(e) motion, and in failing to rule on every issue raised in his PCR application. A portion of Ground Eight also appears to argue that the PCR court erred in denying his motion to relieve PCR counsel and in denying him two subpoenas. As argued by the respondent these grounds are not cognizable on federal habeas review. See Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988) (holding that claims of error in state PCR proceedings



are not cognizable on federal habeas review); see also 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). The court further observes that Evans does not appear to respond to these arguments. Having reviewed the authorities cited by the respondent, the court agrees that Evans is not entitled to federal habeas relief on these claims.

### 2.    Procedural Default

The respondent also argues that Grounds Four through Eight, Ten through Eleven, and Thirteen through Fifteen are procedurally barred from federal habeas review. These grounds raise numerous claims of ineffective assistance of trial counsel (Grounds Four, Six through Eight, Ten through Eleven, Thirteen, and Fifteen), as well as a claim of prosecutorial misconduct (Ground Five) and a due process allegation challenging the sufficiency of the evidence to support his conviction (Ground Fourteen).

With regard to the ineffective assistance of trial counsel claims, as pointed out by the respondent, many if not all of these claims were raised in Evans's PCR application; however, Evans did not present any evidence in support of these claims at the PCR hearing and the PCR court did not rule on these claims in its February 22, 2011 Order of Dismissal. Although Evans submitted a *pro se* Rule 59(e) motion seeking a ruling on these claims, it was filed after PCR counsel had filed and served a notice of appeal of the PCR court Order of Dismissal. Thus, it was filed after the appellate court had exclusive jurisdiction over the matter. See, e.g., Lancaster v. Georgia-Pacific Corp., 742 S.E.2d 867, 868 (S.C. 2013) ("Pursuant to Rule 205, SCACR, upon the service of a notice of appeal, the appellate Court has exclusive jurisdiction over the appeal, with the exception of matters not affected by the appeal. The appellate court retains jurisdiction until the remittitur is sent to the lower court."). Therefore, these grounds were not preserved for appellate review under



state procedural rules.  See Humbert v. State, 548 S.E.2d 862, 866 (S.C. 2001) (holding that an issue must be raised to and ruled on by the PCR court to be preserved for appellate review); see also Marlar v. State, 653 S.E.2d 266, 267 (S.C. 2007) ("Because respondent did not make a Rule 59(e) motion asking the PCR judge to make specific findings of fact and conclusions of law on his allegations, the issues were not preserved for appellate review.").

Evans does not appear to disagree that these claims of ineffective assistance of trial counsel are procedurally defaulted.  However, Evans argues that his procedural default should be excused pursuant to Martinez v. Ryan, 132 S. Ct. 1309 (2012), arguing that PCR counsel failed to seek a ruling on each of Evans's claims.

Generally, any errors of PCR counsel cannot serve as a basis for cause to excuse a petitioner's procedural default of his claims.  See Coleman, 501 U.S. at 752.  However, in Martinez the United States Supreme Court established a "limited qualification" to the rule in Coleman.  Martinez, 132 S. Ct. at 1319.  The Martinez Court held that inadequate assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  Id. at 1315.  In describing its holding in Martinez, the Supreme Court has recently stated that

> [w]e . . . read Coleman as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

Trevino v. Thaler, 133 S. Ct. 1911, 1918 (2013) (citing Martinez, 132 S. Ct. at 1318-19, 1320-21); see also Sexton v. Cozner, 679 F.3d 1150, 1159 (9th Cir. 2012) (summarizing the Martinez test to



require the following: "a reviewing court must determine whether the petitioner's attorney in the first collateral proceeding was ineffective . . ., whether the petitioner's claim of ineffective assistance of trial counsel is substantial, and whether there is prejudice").

Further, to excuse the procedural default of Evans's proposed ineffective assistance of trial counsel claims, he must "show that [PCR] counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter." Sexton, 679 F.3d at 1157; see also Williams, 529 U.S. at 391 (stating that "the Strickland test provides sufficient guidance for resolving virtually all ineffective assistance-of-counsel claims"); Strickland v. Washington, 466 U.S. 668, 687 (1984) (stating to demonstrate ineffective assistance of counsel, a petitioner must show that (1) his counsel was deficient in his representation, *i.e.* that counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution and (2) he was prejudiced as a result).

The crux of Evans's argument appears to be that PCR counsel was ineffective in failing to file a Rule 59(e) motion to obtain rulings on all of the claims Evans raised in his PCR application. Evans agrees that the only claims that the PCR court ruled on in its Order of Dismissal were Evans's claims that trial counsel was ineffective because (1) he advised Evans not to testify and improperly advised him that his criminal record would potentially come into evidence because some of his convictions were more than ten years old; (2) he failed to impeach the victim's testimony that she was scratched above her right eye while a photograph introduced into evidence by the State depicts a scratch above her left eye; (3) he failed to obtain the victim's medical records; (4) he failed to find any witnesses that could testify that Evans and the victim left the bar together; and (5) he failed to



obtain criminal records of the State's witnesses. (ECF No. 41 at 9-10.) Evans points out that because South Carolina does not permit hybrid representation he filed a motion to relieve counsel and a *pro se* motion for reconsideration under Rule 59(e). However, as argued by the respondent these motions were filed after PCR counsel had filed and served the notice of appeal.

Applying <u>Martinez</u> to the record and Evans's arguments, the court concludes that he cannot satisfy <u>Martinez</u>'s limited exception. Upon review of the record, including the transcripts of the trial and the PCR proceedings, as well as the additional evidence submitted by Evans in support of this argument, the court finds that Evans cannot demonstrate that his claims in Grounds Four, Six through Eight, Ten through Eleven, Thirteen and Fifteen are substantial claims of ineffective assistance of trial counsel; that PCR counsel was objectively unreasonable in failing to raise them; and that, but for PCR counsel's errors, there is a reasonable probability that Evans would have received relief on these claims of ineffective assistance of trial counsel.

With regard to Ground Four, which argues that trial counsel was ineffective in failing to object to an invalid indictment, Evans cannot demonstrate that this claim of ineffective assistance of trial counsel is a substantial claim and cannot demonstrate that he was prejudiced by PCR counsel's failure to present this claim at the hearing or preserve this claim by filing a Rule 59(e) motion. The trial transcript reflects that after the trial judge was handed the incorrect indictment at the start of Evans's case, a bench conference was held and the trial judge received the correct indictment. The parties agreed that a charge was changed in the original indictment, and the parties agreed that the offenses all occurred on February 23, 2008. Trial counsel did not move to quash the indictment. (App. at 9-10, ECF No. 28-1 at 11-12.) The indictment was not discussed again until after the jury returned its verdict. At that time, trial counsel moved to bar the State from seeking a sentence of life without parole (LWOP) arguing that the original notice was insufficient under S.C.



Code Ann. § 17-25-45.  Trial counsel stated that although the State had provided the required statutory notice with the original indictment, that notice was no longer valid because the indictment under which it had been given had been *nolle prossed* and the State had not provided a new notice after the new indictment had been returned.  The State argued that the original notice was still valid, and the trial court took the matter under advisement for further research.  (App. at 421-22, ECF No. 28-4 at 23-24.)  Ultimately, the trial court denied the motion pursuant to state law and imposed the LWOP sentence.  (App. at 427-28, ECF No. 28-4 at 29-30; <u>see also</u> App. at 557-58, ECF No. 28-5 at 59-60.)

Evans's appellate counsel challenged this ruling in his direct appeal, arguing that the trial court erred.  (App. at 433, ECF No. 28-4 at 35.)  However, by affidavit dated March 2, 2010, Evans indicated his desire to discontinue his appeal.  (ECF No. 28-7.)  On March 15, 2010, the South Carolina Court of Appeals filed an Order of Dismissal, finding that Evans "with full understanding of all possible consequences of this action and with agreement of counsel, wishes to withdraw the appeal" and dismissing Evans's appeal.  (App. at 443, ECF No. 28-4 at 45.)

Evans appears to argue that the amendment of his indictment resulted in a jurisdictional defect rendering the trial under the indictment void, and that there was an amendment to the essential elements of the third offense charged, a charge of which he was found not guilty.  In support of his argument Evans first relies on an overruled Supreme Court case, <u>Ex parte Bain</u>, 121 U.S. 1 (1887).  Thus, he appears to base his argument on the out-dated concept that a defective indictment will deprive a court of subject matter jurisdiction.[3]  <u>Cf.</u> <u>United States v. Cotton</u>, 535 U.S. 625 (2002).  Furthermore, as argued by the respondent, Evans has presented no evidence that he lacked notice of

---

[3] His reliance on an out-of-circuit case, <u>United States v. Begnaud</u>, 783 F.2d 144 (8th Cir. 1986), is also unavailing.



the charges that he faced, even after the indictment was amended. Additionally, the record reflects that trial counsel's failure to object to the indictment was the result of an unsuccessful strategic decision to prevent Evans from receiving an LWOP sentence by arguing that the State had not given statutory notice with respect to the amended indictment. The fact that trial counsel's strategy was unsuccessful is insufficient to demonstrate that his performance was deficient. See United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004) ("Under the first prong of Strickland, we apply a 'strong presumption' that a trial counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.' ") (quoting Strickland, 466 U.S. at 689).

Therefore, under these circumstances, no court could find that PCR counsel was deficient in failing to argue or otherwise seek a ruling from the PCR court on this claim of ineffective assistance of trial counsel. Much less could the court say that the alleged error was so serious that PCR counsel's performance fell below the objective standard of reasonableness guaranteed by the Sixth Amendment. See Strickland, 466 U.S. at 689 (stating that in examining whether counsel was deficient, "every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time"). Under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 788 (2011). Consequently, PCR counsel's performance cannot be determined to have been objectively unreasonable based on the arguments raised by Evans. Additionally, even if PCR counsel's performance were deficient, Evans cannot demonstrate that, but for PCR counsel's errors, there is a reasonable probability that Evans would have received relief on this claim of ineffective assistance of trial counsel.

With regard to Grounds Six through Eight, Ten through Eleven, Thirteen, and Fifteen, Evans has failed to present any argument supporting the underlying claims of ineffective assistance of trial counsel in response to the respondent's motion for summary judgment; rather, he just generally argues that his PCR counsel had a duty under state law to seek rulings on all available grounds. Furthermore, based on the record before the court, the court agrees with extensive persuasive arguments presented by the respondent in support of his position that Evans cannot demonstrate that any of his defaulted claims of ineffective assistance of trial counsel are substantial claims and cannot demonstrate that he was prejudiced by PCR counsel's failure to preserve these claims by filing a Rule 59(e) motion.  (See Respt.'s Return & Mem. Supp. Summ. J. at 34-41, 42-47, 53-56, 57-60, 70-71, 73, ECF No. 28 at 34-41, 42-47, 53-56, 57-60, 70-71, 73.)  The court further finds that Evans cannot demonstrate PCR counsel was objectively unreasonable in failing to seek PCR rulings on these claims and that, but for PCR counsel's errors, there is a reasonable probability that Evans would have received relief on these claims of ineffective assistance of trial counsel.

Because Evans cannot demonstrate that his claims of ineffective assistance of trial counsel are substantial and that PCR counsel was ineffective under Strickland in failing to preserve them, he cannot establish cause under Martinez excusing the procedural default of Grounds Four, Six through Eight, Ten through Eleven, Thirteen and Fifteen.

Finally, Evans also does not appear to challenge the respondent's position that Grounds Five and Fourteen are procedurally defaulted.  To the extent that Evans's response may be construed as arguing that his procedural default of his claim of prosecutorial misconduct (Ground Five) and his due process allegation challenging the sufficiency of the evidence to support his conviction (Ground Fourteen) should also be excused pursuant to Martinez, 132 S. Ct. 1309, such an argument is misplaced.  As indicated above, the Martinez Court held that inadequate assistance of counsel "at



initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of *ineffective assistance at trial*." Id. at 1315 (emphasis added).  Thus, Martinez does not aid Evans in excusing his procedural default of claims unrelated to ineffective assistance of trial counsel.

Therefore, the court finds that Grounds Four through Eight, Ten through Eleven, Thirteen through Fifteen are procedurally barred from federal habeas review.

**3.    Merits**

Thus, the remaining grounds that are cognizable and properly preserved for federal habeas review are Evans's claims that trial counsel was ineffective in failing to obtain and utilize the victim's medical records for impeachment and in failing to obtain criminal records of the State's witnesses (Ground Nine) and that trial counsel was ineffective in advising Evans not to testify and improperly advising him that his criminal record would potentially come into evidence because some of his convictions were more than ten years old (Ground Twelve).  As an initial matter, the court observes that the respondent thoroughly and aptly addressed these claims in his memorandum accompanying his motion for summary judgment, and in response, Evans did not address these claims or otherwise challenge the respondent's position.  Therefore, the court finds that Evans has abandoned these claims.  Moreover, even assuming Evans did not abandon Grounds Nine and Twelve, having reviewed the PCR court's order pursuant to the § 2254 standard, the court finds for the reasons discussed and argued by the respondent that the state court did not unreasonably misapply the Strickland test in determining that no Sixth Amendment violation occurred. (See Respt.'s Return & Mem. Supp. Summ. J. at 47-52, 60-69, ECF No. 28 at 47-52, 60-69); Harrington, 131 S. Ct. at 788 (stating that when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions



were reasonable[;] [t]he question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard"); <u>Strickland</u>, 466 U.S. at 687 (stating to demonstrate ineffective assistance of counsel, a petitioner must show that (1) his counsel was deficient in his representation, *i.e.* that counsel's errors were so serious that his performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment to the United States Constitution and (2) he was prejudiced as a result).  Therefore, Evans is not entitled to federal habeas relief on these claims.

### RECOMMENDATION

For the foregoing reasons, the court recommends that the respondent's motion for summary judgment (ECF No. 29) be granted and Evans's Petition denied.

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 15, 2015
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).